# BANKERS LIFE COMPANY v. FARMERS STATE BANK OF WILMONT.[1]

March 3, 1933.

No. 29,226.

[1]Reported in 247 N. W. 239.

*J. A. Cashel,* for appellant.

*A. R. English* and *Clarence J. Donnelly,* for respondent.

HOLT, JUSTICE.

The action was brought upon a written contract which defendant denied making. It also set up a defense that plaintiff by another contract with a third party had superseded the one sued on. This the reply denied. Findings were made in plaintiff's favor. Defendant's motion for amended findings or a new trial was denied, and it appeals from the judgment.

The facts surrounding the agreement may be thus stated: Both parties are corporations, defendant being a state bank. In March, 1925, one P. B. Smith and wife gave a mortgage on a half section farm in Nobles county, this state, to plaintiff to secure the payment of their note for $21,000, with interest at five per cent, payable semi-annually. In September, 1928, said Smith and wife executed to defendant a second mortgage upon the same farm to secure their note for $3,700. The mortgages were properly recorded a few days after their execution. In April, 1930, both mortgages were in default. Defendant having begun foreclosure by advertisement, the sale being set for May 31, 1930, requested plaintiff to withhold foreclosing its mortgage until after the period of redemption had expired from defendant's foreclosure. Plaintiff agreed to wait if defendant would undertake to pay the interest that was due and that would fall due on its first mortgage during the year of redemption and also would pay the taxes for the years 1929 and 1930. To evidence this agreement defendant delivered the following writing to plaintiff:

"Farmers State Bank

"Wilmont, Minnesota

"July 8th, 1930.

"The Bankers Life Company

"Des Moines, Iowa

"Gentlemen:

"Regarding the P. B. Smith loan No. 20956, The Farmers State Bank hereby agrees to pay all interest and taxes on the above described loan, as follows, interest Oct. 1st, 1930, $550.00, April 1st, 1931, $550.00 and taxes for years of 1929 & 1930.

"Farmers State Bank

"H. J. Murphy, Cashier"

Defendant completed the foreclosure, and in reliance on defendant's agreement plaintiff refrained from foreclosing its mortgage. Defendant paid the interest on the first mortgage which fell due October 1, 1930, but failed to pay the interest which fell due April 1, 1931, and failed to pay the taxes for the years 1929 and 1930. The taxes for the two years amounted to $633.61. P. B. Smith and wife granted possession of the farm to plaintiff on May 28, 1931, and plaintiff thereafter, on June 23, 1931, leased the same to the Smiths for two years from March 1, 1931.

The several assignments of error are directed against the finding that the above quoted agreement bound defendant. If that agreement is the obligation of the defendant, the court correctly refused to amend the findings as requested by defendant. Before going to the merits of the appeal we note the attack on a finding of minor importance. Counsel for defendant contends that this finding goes beyond the evidence:

"That defendant requested plaintiff to withhold foreclosure until defendant's mortgage could be foreclosed so it could pay the interest due on the first mortgage and file affidavits so as to include such payments in the amount required to redeem from its proposed foreclosure."

We deem the finding sustained. When Mr. Murphy, defendant's cashier, talked over the agreement and came to an understanding

with plaintiff's representative that plaintiff would refrain from foreclosing its mortgage while the year of redemption ran on defendant's foreclosure, then already started, Murphy paid the interest then past due on plaintiff's mortgage. Since this was done before the sale had taken place, at the suggestion of the attorney for defendant, the payment was made by the cashier personally, so that defendant could pay after the sale and then be able under the statute to add such payment to the amount required to redeem. That payment was not included in the written agreement in suit. The situation of the parties and their apparent desire to avail themselves of the statute, G. S. 1923, § 9648, as amended, 2 Mason, 1927, id., in what they did and in what they, in writing, agreed should be done in the future, makes it clear that the finding is proper.

The main claim is that Mr. Murphy, the cashier, had no authority to execute the agreement. It professes to be the defendant's contract, and must be held to be its contract if its cashier had authority to execute it. The second mortgage belonged to defendant. Plaintiff's large mortgage was prior. It was for the interest of defendant to have a foreclosure of the first mortgage delayed until, perchance, a redemption from defendant's foreclosure might liquidate its debt and the payments it made under the contract in suit. And if there was no redemption, defendant as owner would not have to immediately redeem from the foreclosure of the first mortgage, including large foreclosure expenses, but might take its time in paying off the same. The authority of the cashier of a bank is extensive when it comes to protect the bank's property and security. We see no difference in principle from preserving and protecting the bank's second mortgage, as in this instance, and preserving personal property covered by a bank's chattel mortgage, as in Sutley v. Polk County State Bank, 162 Minn. 118, 202 N. W. 338. There is really no occasion to cite further authorities. Defendant made no effort to deny Mr. Murphy's authority. It offered no evidence. In 7 C. J. p. 549, it is said:

"The cashier * * * is ordinarily the active financial manager and agent of the bank."

And Morse, Banks & Banking (6 ed.) § 157, says of his powers:

"The cashier has full charge of the bank's personal property, except so far as withdrawn from his control by the bank or by the directors."

As stated, no evidence was offered as to any limitations on the cashier in this case.

We think there is nothing in defendant's claim that plaintiff did not bind itself not to foreclose. It not only gave its promise, but it faithfully kept it. It executed its part of the understanding. The taking possession on June 23, 1931, was in no manner foreclosure of its mortgage.

Defendant also contends that by the grant of possession, above mentioned, to plaintiff from the Smiths a contract was made that inured to all parties concerned, including defendant, and that thereby the benefits to plaintiff from the lease beginning March 1, 1931, would wipe out the payments defendant agreed to make. We can see no connection between the grant of possession and the agreement in suit that in anywise would relieve defendant from the payments it agreed to make.

The judgment is affirmed.

OLSEN, JUSTICE, took no part.